Mr; Justice Johnson,
 

 delivered the opinion of the-Court. — -
 

 This appeal brings up for,-revision- a decree of -the Circuit Court of this district^ by which this appellant has been required to execute, specifically, an agreement for the sale of land. The bill set's up a certain written instrument, as a sufficient memorandum in writing; but not relying solely- on that,- goes -on to make ovit one of-those cases,, in which a Court of Equity -exercises this branch of its jurisdiction,, in, order that the statute of-frauds may not be made a cloak for fraud; that is a ease of performance on the part of the complainant. .
 

 This, has caused the question on the right tc relief, in a case within the provisions of the -statute, to be mixed up with -a great deal of ¡extraneous- matter, which need not have been set out, hadthe.claim to'relief-been confined to the one ground alone.
 

 The memorandum set up is in the formmf a'stated account, whoily in the handwriting of the appellant-, Barry, the defendant beiów, and acknowledged to be a copy made by.him of another, .¿Iso made out'in his ■ handwriting, actually signed by Coombe the-appellee, and now in the hands of Barry. So that -Barry’s name is in the caption, if it may be. so,called,’.and. Coombe’s-at the foot of the'memorandum* -The.item of the account, which relates to the-bargain -or agreement for the sale of the land,, is in these wofds, letters, and figures. -
 

 “ By my purchase of your
 
 ¶
 
 E. B. -Wharf .ánd - premises this-day as agreed on between us;” and the credit is carried out in figures' 87578 63, and deducted from the-amount charged to Barry.;
 

 
 *648
 
 Then follows this memorandum, r‘ balanc'e'due G. Coombe fifteen hundred Dollars, payable'in one two and three years, with'interest. G. Coombe.”
 

 The defence-set up in the answer is, that the transaction was not final; that it amounted to nothing more than a treafy in progress'; that as far as it -proceeded it was obtained, by.false and fraudulent suggestions on ■ the part. of- complainant; and' that the name of defendant was signed, if signed at all, only to-síate an account, not to acknowledge a contract; and the answer concludes with submitting to the Court, whether it be “ an agreement such as is required by law and equity, to com--pel the defendant to make the sale and conveyance claimed, and prayed for by complainant”
 

 It is under these words alone, that the protection of the statute of frauds is set up by defendant; . But in the view which this Court will take of this subject, it’ is unnecessary to inquire, whether the case required or admitted that it should be more formally pleaded, since we will,dispose of the cause under, the admission, that he has entitled himself by his answer to the full benefit of the statute, if the facts of the case would maintain the defence.
 

 And first it is obvious, that it would be idle to consider the form and effect of the instrument, if the treaty was never brought to a conclusion. On this fact the answer has put the complainant upon', proof, and two witnesses have been examined to the point. Mr. Pleasanton the first witness- swears — that in the year 1820, the defendant showed him a statement of accounts, which he believes was a copy of one exhibited by the complainant, and informed him that he' had made a settlement of accounts with complainant, that the account so shown exhibited' a balance' against the defendant of 500’or 1500 dollars, that it was in Barry’s own handwriting, and that he stated, as ah inducement to make it, that Coombe had made a. sacrifice to obtain it.
 

 The account so shown to Mr.'Pleasanton, could have been no ’ other than the. original of that which Coombe has exhibited, and the facts to which this witness testifies, are strongly indicative of a finalftransaction.
 

 The next witness, Mr. Carroll, is still more positive. He was present at the transaction, and, as he testifies, at the request'of' both parties, became the depository of several documents relating to it; and on the- subject of the conclusive character of the transaction, his language is “ that he understood the settlement to be final and absolute.”
 

 But there were other facts to which Mr. Carroll was exa-amined; and it is argued, that his testimony as to those facts goes to prove, that he was' mistaken in the view which he took
 
 *649
 
 of the transactions; that they go to prove that there.was some” thing yet to be done, before the agreement should be closed. Coombe, it seems, insisted that Barry should" give his note for the balance stated, and a deed for the property before heleft Washington. This Barry resisted, and finally left Washington without doing'either, and returned to his home at Baltimore. ■ It cannot be.denied that this does conduce to prove an unfinished treaty, but the inference is repelled by various considerations.
 

 And first, preparing the deed might require time, his business may have pressed for his return home, or he may have wished his own counsel or scrivener to draw up the deed.
 

 2. As to the notes, giving them, made ho part of the agreement reduced to writing; the balance stated was-to have been paid in one, two, and three years, but it does not express, that notes are to be given for it, and he may have had his reasons for declining to give his notes, or for taking advice upon it. If there should prove to be errors in the stated accounts, upon' more deliberate examination, these errors might more conveniently have been adjusted upon the stated balance, than-upon notes, which might have found their way into several hands, and thus have multiplied litigation.
 

 3.. It does not appear from. Mr. Carroll’s testimony, that Barry refused generally to give either deed or notes, but only to give them before he went to Baltimore; on the contrary, he appears to have resented Coombe’s seeming tó act upon a doubt that he would then execute and send them, and to this Mr. Carroll bears positive testimony, when he says “ that he understood that the notes and deed were as certainly to be sent on from Baltimore, as if executed on that day.”
 

 But what is conclusive in this part of the cause is, that the transaction was followed up by an act on the part of Barry, which no honest man could have done, otherwise than in the supposition that it was a finished transaction. It appears that Coombe, together with Mr: Carroll and Mr. Rice, held a mortgage of a quantity of leather to the value of 7000 dollars, given to secure to them certain sums advanced on behalf of one James D. Barry ; that the defendant Robert Barry had assumed the debts of- James D. Barry, and thereby acquired a resulting use, or equity of redemption, in this leather. That the sum for which Coombe held his lien on the leather, to wit, 4209 dollars, was one of the items of account in the exhibit upon which the complainant relies, to obtain a decree for specific performance. But, as abalance of 1500 dollars still remained due to Coombe upon the stated account, the leather was still pledged to him for that amount. This interest Coombe was induced to release to Bar-rv, and which he accordingly did, by an endorsement upon the '
 
 *650
 
 instrument of writing by which the lien .was created. And Mib Carroll .testifies “ that the defendant did. receive at'th'e t.anyard in Washington, all the leather mentioned in the bill of s'ale,
 
 in consequence of complainant’s release.”
 

 It is true, an attempt was afterwards made.in this' suit to .arrest the leather in the hands of.. Barry, but it was not.on the .ground that the treaty was
 
 in fieri,
 
 or the release not final; but to subject the leather to the debt, which would be due to the complainant, if.-he could not obtain the specific execution of the sale of the whárf, as well 'as the acknowledged balance. It is obvious then, that in reducing thé leather into' possession, Mr. Barry must either.have acted fairly, on the idea of a-finish-ed transaction, or unfairly, by entering upon thé fruition a'fraud* practised to obtain the release.
 

 • Wewill consider him as having acted fairly upon the ground of a . treaty final and Concluded, to bé .carried' into .exec u tion according to its terms. But the statute of-Frauds in Maryland requires-written evidence of the contract, or a Court cannot decree performance. Is this Such written evidence of á “contract or sale of lands” as satisfies'the exigency of that; statute? The'words, of the statute are, “ unless. the .agreement upon which' such action shall be brought, or some memorandum'or • note thereof, shall be in writing and signed 'by the party, to- be' charged therewith, or by some other person, by him thereunto' lawfully authorized.”
 

 A note or memorandum in writing of the agreement, therefore, is sufficient,, and there Is no question that in order to obtain a specific performance in equity, the note in writing must be sufficient to maintain an action at law. The form'is riot regarded, nor the place of signature, provided it be in the handwriting of the-party- or his agent, and furnish evidence of a complete and practicable agreement. A Court oí Equity will supply no moré than-the ordinary-incidents tósuchan agreement; such as the ingredients of a complete transfer, usual covenants, &c« ■
 

 • At first view, this would seem tp be,an anomalous case, but itis only necessary to reduce it to its elements, in order tó discover, that'-itis one., known to the adjudications of; Courts of' Equity on this statute^. As.to-the balance.stated, it is final and' conclusive-between these--parties, and
 
 insimul
 
 computasseni,. might pe maintained upon it, by Cbbm.be, for the: amount..' And in an action by him, going'.' to claim'the whole amount charged to Barry, it would be good evidence in the hands of Barry, to reduce Coombe’s demánd downto-the bal'arice- stated.
 

 It is then equivalent to a mutual and reciprocal receipt between these parties; on-the orné hand,-.Coombe signs' a receipt for the price’ of the--premises in controversy,’ in account with-
 
 *651
 
 ■Barry, and Barry on the other, signs a receipt to Coombe, acknowledging that he has received the price stipulated, in full • of the purcháse money of the same.
 

 This is .the real purport and effect of the writing in evidence, and had the instrument, signed by.the parties, béen expressed in these terms, there could not have heen a doubt of its sufficiency, (12
 
 Vez. jr.
 
 466. 9
 
 Vez. jr.
 
 234.) But it is argued that this was not the intent with vCiich the writing was concocted. That it was to state an account, and not to note an agreement for the sale of property, that it was drawn up and signed; An examination of the cases on. this subject, will show that Court,s of Equity are pot particular with regard to the direct and immediate purpose for which the written evidence of a contract was created.
 
 It is written
 
 evidence, which"1 the statute requires, and anote or letter, and even in one case, a letter, the object of which Was to annul the contract, on a- ground really not unreasonable, (1
 
 Atk.
 
 12. 1
 
 Sch. & Lef.
 
 22,) has been held to bring a Case within the provisions of the. statute.- But, in the present instance^ although not the sole object of creating the instrument, it really was an object, and an important one, inasmuch as the balance-of account, theimmediate object of the stated account, mainly depended upon the item for the'sale of these premises. It could pot be,stated without acknowledging, that the one had agreed to sell and the- other to purchase 'these premises, at a stated price. On this párt of the cause,- th.e case of Stokes
 
 vs.
 
 Moore, has been cited,
 
 (1 Cox,
 
 218,) and insisted on as furnishing an argument, against the. sufficiency of the signature of. Barry in this cause. But in the case of Stokes ns. Moore, it must, be observed, that both the Judges who sat on that cause.admit that this was not the principal question in the cause, and it was decided upon the ground, that the memorandum was proved but to- express the entire agreement between the parties. But, if considered as authority in this point, it is only necessary to advert to. the ground upon which- the opinion is expressed, “that-the name-there w'as-not a sufficient signature under the statute,” in order to discover that it does not impugn the opinion entertained by this Court in the present caused The rule there laid down is, “ that the signature is to have the effect of giving authenticity to the whole instrument j” and in .this instance, we hold it to be in its.proper place, for that purpose. If so, -the Court there further obseryes,. “that it doe? not signify much in what part of the instrument it is to be found.” It remains to examine whether the memorandum is sufficiently full and explicit, to admit of- a decree for specific performance. The words
 
 are,u
 
 By my purchase of your
 
 i
 
 E. B. wharf and premises, this day, as agreed on -between us, 87578 63.” Brief as it is, this memorandum contains a condensed summary of all the es
 
 *652
 
 sentíais to a complete contract. By the use of the present tense, it speaks of a thing’ final and concluded. By reference to the date at the head of the account, the use of the words “ this day” gives a date to the transaction. By the use of the pronouns
 
 your
 
 and ms, the parties are distinctly introduced. By carrying out the price, the consideration is expressed with absolute precision, and by deducting it from the sum acknowledged due by Barry, the receipt of the consideration is acknowledged; nor is thcr.e a single ingredient of a complete contract deficient, unless the description of the property contracted for, be insufficient. If that description be fatally ambiguous, it is certainly a sufficient ground to refuse relief. The ambiguity here, arises from the use of the capital letters E. B. in the description of the premises;, and if those letters stood alone, and unconnected with any thing that could give them a definitive signification, there would be much reason to doubt whether the defect would be curable. The words are, “ Your é E. B. wharf and premises,” and it is argued that this is one of those ambiguities, generally designated by the epithet — patent, and as such, admitting of no explanation from extrinsic evidence.
 

 Sir Francis Bacon, in his elements of common law,
 
 (Regula
 
 23,) is the author usually referred to on this distribution of ambiguities, into
 
 patent
 
 and
 
 latent;
 
 the former appearing on the face of the instrument, and not to be removed by extrinsic evidence, but only, in the language of the author, “to be holpen by construction or election;” the latter raised by reference to extrinsic circumstances, and remediable by the same means. It would perhaps be a more convenient, and certainly a more intelligible distribution of the doctrine on this subject, if the cases were divided into positive, relative, and mixed; the positive corresponding.to the patent; and the relative to the latent ambiguities of th.e authors who treat of the subject. The mixed, would consist of those cases in which, although the ambiguity is suggested on the face of the instrument, the face of the instrument also suggests the. medium by which the ambiguity may be removed.
 

 The facts of this case will bring it either within the second or third class; within the second, because, for any thing that appears on the face of the instrument, E. B. wharf, may be as definitive a description of locality as F street, and then the ambiguity could only arise, if it be shown that the bargainor had more than one house in F street, like the two manors of Sale, put by several authors.
 

 Perhaps this case belongs more properly to the third class, since the description suggests several circumstances of identity, by reference to which, the premises in question .are distinguishable from all others ;'first, it is a wharf; secondly, a wharf
 
 *653
 
 the property of Barry; thirdly, a wharf of which he owns a moiety; and connected with' these descriptive circumstances; the letters E. B. became in fact the initials of the name of a place; and the case is analogous to that of a will, in which the devisee is designated as my son. A, my nephew B. C, or my uncle D. E, in which the circumstance of relationship, will let in evidence to fill up the names designated by the initials.
 

 In fact the cases on this point have gone much farther, and without committing ourselves on the correctness of the following two, it will be found by referring to them-, such evidence has been let in to supply names, in cases where the identification was by no means as circumstantial as the present.
 

 In the case of Price
 
 vs.
 
 Page, (4
 
 Vez. jun.
 
 68,) the entire Christian name was supplied .on parol evidence without any initial, Price the son of Price being the only designation. In the case of Abbot vs. Massie, (3
 
 Vez. jun.)
 
 the devise was to A. G. and Mrs. G. and evidence ordered to bé received to identify the legatees.
 

 If ever extrinsic evidence may be-admitted to carry but the initials of a name, it’is impossible that.a case can occur, tofurnish evidence more full or unexceptionable in its character, than the present. The bill alleges that the letters E. B. mean Eastern Branch, and the defendant not only admits in his answer, that the treaty had relation to his moietyof a' wharf and premises on the-Eastern Branch of the-Potomac, but voluntarily, although
 
 altero intmtii,
 
 introduces a letter from himself to complainant, in which itis explicitly acknowledged. “ Having agreed to sell ' you my individual half-interest in the Eastern Branch wharf and premises,” is His language in the letter. Besides which, the original deed is spread upon .the record, by which it appears that the defendant held a moiety, as tenant in common with the plaintiff, of a wharf and premises on the Eastern Branch of the Potomac river, which is well known in common parlance as the Eastern Branch, without the addition of Potomac or river. .We are therefore of opinion, that the ambiguity is fully removed, and legally, since it is by reference to a,medium of explanation suggested on the face of the memorandum;.and on evidence, which while it neither addsjto, detracts from, nor varies, the note in writing, suppliés every exigency of the statute of frauds.
 

 The.onl-y remaining question arises on the effects of Coombe’s letter of the ,26th of March T822, which the defendant insists amounted to a relinquishment of the contract of salé, arid this appears tp .some of the Court, to present the greatest difficulty ■ in the causé. For it'•cannot be denied, that the letter is not confined in its import to a demand of p fulfilment of the contract. It does nqt intimate an intention to enforce the contract;
 
 *654
 
 but on the contrary, conclúdes with a declaration, that if Barry does not comply with this contract oft his part, the complainant will hold himself exonerated, and -will resort to his original money contract, as it stood prior to their entering into the contract for the sale of the premises.
 

 Nothing therefore, but the equivocal conduct of Barry on the receipt of that letter as proved in the deposition of Ingle, deprives him of the benefit of this defence. To have availed himself of it, he should have adopted the alternative offered' him; and as the only unequivocal proof of it, should have tendered to Coombe the amount justly due to him, after extracting that-item from the account. This he did not do, and it was too late after the bill filed to claim the benefit of a right thus gone by; at least, without paying unto Coombe the amount which would have been due to Coombe upon a mutual relinquishment of the bargain.
 

 As to the ground of misrepresentation and fraudulent con cealment, we have not thoiight it necessary to say more, than that there is not the least evidence to support the charge set up in the answer.
 

 Nor is it necessary t.o examine the case on the ground of part performance, since this Court is fully satisfied on the sufficiency of the memorandum in writing.to sustain the decree; so far as it requires Barry to make title to the moiety of the wharf, lot and premises.
 

 ■ With regard to that part of the decree which relates to'the payment of the balance of the stated account, and perpetuates . the injunctionnot to remove, certain property beyond the jurisdiction of the Court, until that balance be paid, we are induced to consider all. objections to be waived.
 

 Yet wé mean not to express any doub.ts-of its correctness, since the defendant has no where put his defence upon the ground of the remedy at law; but on the contrary, by his answer he impeaches thé conclusiveness of the stated account,.- and raises .an issue, in equity, upon the fairness and correctness of several items, which if expunged would leave a balance in his favour.
 

 This defence he has failed to sustain by proof, and the Court on that ground alone, independent of its connexion with the' principal subject of the bill, might legally decree payment of the stated balance, and the means of enforcing payment.
 

 Decree affirmed with costs, and cause remitted for final proceedings.