CASE 52—PETITION EQUITY—MAY 6.

# Horsley v. Asher's Heirs.

APPEAL FROM CLAY CIRCUIT COURT.

1. AN ORDER TO REVIVE AN ACTION in the name of a representative or successor of a plaintiff may be made at any time within one year from the term of court at which the order might first have been made, as the limitation of one year prescribed by section 509 of the Civil Code was intended to run only from that time, and not from the time of plaintiff's death.

2. CONTRACT PROCURED BY FRAUD.—A contract by which the owner of a large body of land, valuable chiefly for its minerals and timber, granted the right to take minerals and timber from the land in consideration of the payment of twenty-five cents an acre, when the right was worth from six to ten times that amount, was properly set aside by the chancellor, the vendor being an old man who, by reason of disease, was not qualified to transact business, and who did not understand the true meaning and effect of the bond he signed.

HELM & BRUCE AND S. B. DISHMAN FOR APPELLANT.

1. The plaintiff's sole ground for relief is fraud, and the burden of proof is upon him to establish that fact, which he has failed to do. The

Horsley v. Asher's Heirs.

evidence as to the value of the land and of the mineral rights, relates to the time the testimony was given, and not to the time of the contract, and is, therefore, irrelevant.

2. The order of revivor was not made in time. It should have been made within one year of the death of the plaintiff, and not being made within that time, the action should have been stricken from the docket. (Civil Code, secs. 509, 510; Hull v. Deatly, 7 Bush, 691.)

WM. LINDSAY AND EDWARD W. HINES for appellees.

1. By the filing of the amended petition, and the service of summons thereon, the action stood revived in the names of the persons calling themselves executors without an order to that effect. (Civil Code, sec., 509, and amendment; Greer v. Powell, 1 Bush, 496.)

2. Even if the consideration had been adequate, the chancellor would have been justified in setting aside the contract; but when the total inadequacy of consideration is added to the feeble mental and physi-cal condition of the vendor, there can be no doubt of the correctness of the judgment. (Woollums v. Hersley, 93 Ky.)

Gross inadequacy of price is always a badge of fraud. (Hunter v. Owens, 10 Ky. Law Rep•, 652.)

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

J. D. Asher brought this action December 10, 1887, to cancel the following writing signed by him and rescind the contract it purports to be evidence of: "Know all men by these presents, that for and in consideration of ten dollars in hand, paid to-day, June 13, 1887, I have sold to W. J. Horsley, all the coal, gas, oils or minerals, with customary mining privileges, in or on the tract of land situated on the waters of Redbird, Clay county, Kentucky, adjoining the lands of R. W. Asher and others, containing three thousand acres, more or less, at twenty-five cents per acre, and I bind myself and heirs to make a good warranty deed for said coal, gas, oils and minerals free from dower, lien and all incumbrances to the said W. J. Horsley or his assigns, when money is paid as follows, to wit: One-half within six months

after above date; balance within six months from first deferred payment, or as soon thereafter as good warranty deed is made to W. J. Horsley or his assigns for said coals, gas, oils and minerals, with necessary timber for mining and coking purposes."

In August, 1888, while the action was pending, the plaintiff died testate, and a question is made, which we will first consider, whether the action was revived within the period prescribed by Civil Code. October 10, 1888, an order was made suggesting death of plaintiff, J. D. Asher, though it does not appear upon whose motion the order was made, nor was the name or capacity of the representative stated therein, as required by section 501.

March 25, 1889, Thos. J., D. D. and A. J. Asher, mentioned as executors of J. D. Asher, though only the first mentioned of them ever did qualify, filed a petition for revivor and prosecution of the action in their names; but summons thereon, though issued, was never served on the defendant, nor does the subsequent order of revivor appear to have been made in pursuance of that proceeding.

But September 9, 1889, a petition, made an amendment to the original petition of the testator, was filed by his widow and devisees of his will, in which they asked the action revived in their names and for the relief prayed for by him. Summons was issued, and two days after served on the defendant. October 11, 1889, the defendant filed an answer to that amended petition, in which it was alleged the time had expired in which an order of revivor could be made. Neverthless, the court sustained a demurrer to the answer, and on that day made an order of revivor.

Section 509 provides that "an order to revive an action in the name of a representative or successor of a plaintiff may be made *forthwith*, but shall not be made without the consent of the defendant after expiration of one year from the time the order might have been first made."

As an order of revivor can be made only during a term of court, it is obvious the word "forthwith" relates thereto, and limitation of one year was intended under this section to then begin running and not to run from time of the plaintiff's death. In this case the widow and devisees, as they were expressly authorized by section 501 to do, filed their petition before expiration of one year from the October term, 1888, of the court having jurisdiction of the action, when the order of revivor "might have been first made," and thereby, according to both letter and reason of the statute, acquired a standing in court and became entitled to an order of revivor, which was, on the day referred to, legally and properly made.

There is no room for dispute about the facts of this case, nor any reason for hesitation about the judgment a court of equity should render.

1. The person with whom J. D. Asher made the contract was authorized as agent of defendant Horsley to purchase lands containing, or supposed to contain, gas, oil or minerals, and lying within twenty miles of a railroad, to the amount of twenty thousand acres; and the title bond executed by J. D. Asher was already written according to a form adroitly and cunningly prepared; and after the trade was agreed to, all necessary to be done was to fill

the blank with quantity of his land and for him to sign his name.

What was sold by J. D. Asher was, according to unvarying testimony of witnesses, at a grossly inadequate price, and the bargain can not be regarded any other way than unconscionable. The land seems to be valuable only for timber and minerals, gas and oil it contains, and some of the witnesses go so far as to say that the minerals being separated from it, and timber taken or used to the extent and in the way that may be done under the contract in question, the land will be of no value.

They fix the value of the land for minerals, oil and gas, and timber incidentally used for development of it, at from six to ten times more per acre than by the terms of the bond Horsley is required to pay, which is twenty-five cents per acre; and even the agent who made the contract with Asher testifies as a witness what he purchased for that price per acre was worth one dollar and fifty cents per acre, and that the commission Horsley agreed to pay him was greater than the purchase price the bond bound the purchaser to pay.

We think it is also clear that J. D. Asher did not, nor was able to, comprehend the nature, import and effect of the contract he made, and was, in fact, over-reached and defrauded by Horsley acting through his agent. Asher was, at the date of that bond, upwards of seventy years of age. He had been diseased and suffered physical pain for several years to such an extent that he had not attempted, nor was qualified. to properly transact business, all of it having been

done during a period of five or six years by his wife or sons. The witnesses also testify, without contradiction, that he, though originally a man of good sense and business capacity, had become, at date of the bond, childish and notionate. In fact, he closed the contract and signed the bond at the agent's house, where he had gone for another purpose, without taking any time for reflection or consultation, and was in a few hours eager, and offered, to rescind, but the agent refused to do so.

It is further evident Asher did not understand the true meaning and effect of the bond he signed, and which he was unable to read, for by the latter clause of it, which he states was not read to him at all, Horsley was given right to enter upon the land not merely to dig for, find and use coal, gas and minerals of every kind, but to erect thereon all the buildings, machinery and appliances for coking purposes, which necessarily involved use of timber, without regard to quantity or quality.

In our opinion, the contract was not one fit to be enforced in a court of equity, but was made to such disadvantage of J. D. Asher as to induce belief, which the evidence makes a conviction, he was, by reason of want of capacity to understand the meaning and effect thereof, overreached and defrauded.

The judgment of the lower court is affirmed.