## MILLER v. TJEXHUS.

Where the answer in an action to enforce specific performance of a contract is confessedly sufficient to admit testimony of defendant's weak mental condition and incapacity to attend to business, evidence of defendant's total business incapacity cannot be excluded on the ground that it proves too much.

. Where an answer is sufficient to admit evidence that defendant is of weak mind, and incapacitated from attending to business, the admission of evidence of defendant's total mental incapacity does not necessitate an amended answer to conform to the evidence, and permitting the filing of such an answer is not prejudicial to plaintiff.

The right to specific performance being equitable, and resting within a sound judicial discretion, there must be a meeting of the minds in every essential particular, and the contract must be fair, and made by persons of sufficient understanding.

Specific performance of an executory contract for the sale of a homestead made by a vendor mentally incapable of dealing with discretion, and unable, through ignorance of the English language, to understand the nature of the contract or terms of the sale, will not be enforced in favor of the vendee, who, knowing the vendor's weakness and ignorance, took advantage thereof, especially where the vendor returned to the vendee all that the former ever received under the contract.

(Opinion filed, Aug. 22, 1905.)

Appeal from Circuit Court, Minnehaha County. Hon. JOSEPH W. JONES, Judge.

. Action by C. J. Miller against Thorston Gudmenson Tjexhus. From a judgment for defendant, plaintiff appeals. Affirmed.

. . *Rogde & Winans,* for appellant.

Mere weak-mindedness, whether natural or produced by old age, sickness or other infirmity, unaccompanied by other inequitable

incidents, if the person has sufficient intelligence to understand the nature of the transaction and is left to act upon his own free will, is not a sufficient ground to defeat the enforcement of an executory contract or to set aside an executed agreement or conveyance. Pomeroy's Equity Jurisprudence, (Second Ed.) Sec. 947; Beach on Modern Law of Contracts, Vol. 2, p. 1813. Bispham's Principles of Equity, Sec. 230; Warville on Vendors, Sec. 859. The amendment allowed by the court changed the whole theory of the case, and for that reason alone should not have been allowed after the case had been tried and submitted. If the case was not tried upon the theory suggested by the amendment, it ought not to be allowed. Ency. of Pleading and Practice, Vol. 1, pp. 585 and 598; Carter v. Dilley, 67 S. W., 232. All the evidence tending to show total incapacity on the part of the defendant was promptly and repeatedly objected to by the plaintiff as not being within the issues of the pleadings. If the court was right in admitting this evidence, and it was admitted upon the theory of the original answer, then no amendment was necessary and none should have been allowed. Where the proof is germane to the issues there can be no variance between the allegations and the proof, and in such cases it will be presumed that the evidence was admitted only to support the issues, and not for some undisclosed purpose. Sykes v. First Nat'l Bank, 49 N. W., 1058; St. Paul Fire & Marine Ins. Co., v. Dakota Land & Live Stock Co., 72 N. W., 460; Christ v. Garretson State Bank, 82 N. W., 89; Mowatt v. Wilkinson, 85 N. W., 661.

*Robertson & Dougherty* and *Aikens & Judge,* for respondent.

Specific performance is an equitable remedy, which compels the performance of a contract on the precise terms agreed upon, or such a substantial performance as will do justice between the parties, under the circumstances of the case. 26 Am. & Eng. Enc. of Law (2d Ed.) 14; Willard v. Taylor 8 Wall, 557. All the commands and rules which constitute the "private civil law" create two classes of rights and duties, the "primary" and the "remedial." The primary rights and duties form the body of the law; they include all the rights and obligations of property, of contract, and of personal *status;* they are the very end and object of all law. But since all

these primary rights and duties may be violated, another branch of the law becomes necessary, which may enforce obedience by means of the "Remedies" which it provides. * * * * * * If a person upon whom a primary duty rests toward another fails to perform that duty, and thereby violates the other's primary right, there at once arise the remedial right and duty. Pomeroy's Eq. Juris. 2nd Ed. sec. 90 and 91. One class of cases arising in the administration of the equity jurisdiction is where the primary right which has been violated is one which the rules of equity alone create, while the remedial right and remedy may also be only known to equity. An illustration of this class is a suit by a vendee in a written contract for the sale of land to obtain a specific performance. Pomeroy's Eq. Juris. 2nd Ed. sec. 97. The remedy of specific performance, is that by which the party violating his primary duty is compelled to do the very acts which his duty and the plaintiff's primary right require from him. Pomeroy's Eq. Juris. 2nd Ed. sec. 112; Kilgore v. Cross 1 Fed. 578. And whenever a contract concerning real property is in its nature and incidents entirely unobjectionable * * * when it possesses none of those features which, in ordinary language, influence the discretion of the court * * * it is as much a matter of course for a court of equity to decree its specific performance, as for a court of law to give damages for its breach. Pomeroy's Eq. Juris. 2nd Ed. sec. 1402. The right to the specific performance of a contract is not absolute like the right to recover a legal judgment. The granting the equitable remedy is, in the language ordinarily used, a matter of discretion, not of an arbitrary, capricious discretion, but of a sound judicial discretion, controlled by established principles of equity, and exercised upon a consideration of all the circumstances of each particular case. The right to specific performance depends upon elements, conditions, and incidents, which equity regards as essential to the administration of all its peculiar modes of relief. Pomeroy's Eq. Juris. 2nd Ed. sec. 1404. Where greater loss and inconvenience would result to defendant from enforcing the contract than to plaintiff by its abandonment, specific performance will not be decreed. Rushton v. Thompson 35 Fed. 635. It is well settled that there may be a condition of extreme

mental weakness and loss of memory * * * which will, without any other incidents or accompanying circumstances, of itself destroy the person's testamentary capacity, and *a fortiori* be ground for defeating or setting aside his agreements and conveyances. Pomeroy's Eq. Juris. 2nd Ed. sec. 947.

FULLER, J. As a complete defense to this action to enforce specific performance of a contract for the sale of a farm, certain false and fraudulent representations were alleged in the original answer, by reason of which the defendant was induced to believe that plaintiff was paying him $32 per acre therefor, and that such was the consideration named in the written agreement, while, as a matter of fact, $22 was wrongfully inserted therein by the authorized agent of plaintiff with the intent to deceive the defendant, whose mental incapacity is alleged as follows: "That the defendant then was, and for a long time prior thereto and ever since has been, of a weak mind, and to a great extent incapacitated from attending to business; and for many years prior to the last-named date and on that date this plaintiff lived and resided upon said premises, living alone in a small house thereon, and having no family. That on the last-named date two persons, whose names are unknown to the defendant, came to this plaintiff's place of residence on the premises in the complaint and herein described, and, fraudulently taking advantage of defendant's incapacity, procured him to sign a certain writing relative to the sale of defendant's said land to the plaintiff. That said writing was in the English language, and this defendant is unable to read the English language, or to readily understand the same when spoken; the said defendant being of Scandinavian origin, and using the Scandinavian language alone in his communications, written or verbal, with others." It is urged as reversible error that under the foregoing averments, and over the objection of counsel for plaintiff, the court admitted testimony showing total incapacity of the defendant, and then, after the decision was announced in his favor, granted leave to file an amended answer to conform to such evidence as follows: "That the defendant was, and for a long time prior thereto and ever since has been, of weak mind, of inferior intelligence, and to a great extent incapacitated from attending to bus-

iness, and at the time mentioned, to-wit, October 3, 1900, was incapable of transacting business, or knowing what he was doing, or of comprehending the subject of a contract or agreement such as is set forth in paragraphs 2 and 3 of the complaint in this action, and the nature, effect, and probable consequence thereof. That while so incompetent and incapacitated he signed the purported agreement or contract mentioned in the complaint, as therein set forth. That on or about the 22nd day of October, A. D. 1900, the defendant first discovered that he had signed such purported contract or agreement, whereupon he at once rescinded said contract, and notified the plaintiff thereof, and forthwith returned to the plain-, tiff the check for fifty dollars delivered to him at the time of signing said written agreement or contract."

As the original answer was unassailed by demurrer or motion, and confessedly sufficient to admit testimony to the effect that respondent was of weak mind, and greatly incapacitated from attending to any business, evidence of total incapacity could not be excluded on the ground that it proved too much, and, there being no necessity for an amended answer, appellant was not prejudiced thereby. Consequently the only question to be determined is whether the evidence is sufficient to justify the findings of fact and conclusions of law upon which the judgment appealed from was entered. Relative to the point counsel for appellant in their brief say: "All the evidence shows that the defendant, although he was not a bright man, and had but little understanding of the English language, and was therefore peculiarly susceptible to fraud and imposition, and although he was eccentric, morose, slow of speech and of action, inhospitable, and a recluse, yet he had ample mental capacity to make any manner of contract in the absence of fraud and misrepresentation." The right to specific performance being equitable, and within sound judicial discretion, there must be a meeting of the minds in every essential particular, and the contract must be fair, and made by persons of sufficient understanding. The headnote, fully sustained by the opinion, in the case of Burkhalter v. Jones, 32 Kan. 5, 3 Pac. 559, is as follows: "While, in legal contemplation, two persons may make a contract that would be enforced at law, yet if

it should seem probable from the facts of the case that the parties did not in fact and in equity agree to the same thing, the supposed contract would not be decreed in equity to be enforced specifically. Therefore, where the facts are such that in law it would be held that a contract of purchase and sale of a piece of land was made for the sum of $2,000, but in all probability the vendor at the time did not believe that he was making a contract to sell the land for that sum, but believed he was making a contract to sell the land for the sum of $2,100, a specific performance of the contract will not be decreed in equity against the vendor on the tender by the vendee of $2,000." Together with facts showing that respondent was help-lessly incompetent and unable to understand anything that the con-tract contained, the court found "that, while the agents of the plain-tiff who procured the signing of said contract did not represent to the defendant that the price he was to receive was any greater than twenty-two dollars per acre, the defendant, because of his ignorance of the English language and mental inability, did not comprehend or understand the terms or purport of the contract, and did not know that he agreed by said contract to sell said land for twenty-two dollars per acre, but understood that he was to get thirty-two dollars per acre therefor." Every imputation of actual fraud may be reasonably eliminated from this case, but not the irresistible in-ference that appellant was familiar with respondent's weakness of mind and total ignorance of the English language to an extent which rendered him incapable of understanding the nature of the contract or the terms of sale and their minds never met as to the purchase price. Measured by the rule that equity requires more cogent reasons for the enforcement of specific performance than are necessary to sustain a contract that has been fully executed, we find the evidence relative to plaintiff's mental condition abundantly suf-ficient to show his inability to make a binding contract, and the facts found by the trial court are fully justified. The judicial tendency of this enlightened age is against the enforcement of an executory contract procured by a shrewd man of affairs from one known to be mentally incapable of dealing with judgment and discretion, and the

act of taking unfair advantage of respondent's inability to under-
stand the nature and consequences of the purported agreement to
convey his homestead is good ground for denying specific perform-
ance, an especially so when, as in this case, he has returned to the
prospective grantee all that he ever received.

Finding no error of law in the record, the judgment appealed
from is affirmed.