## AMES *v.* AMES.

[No. 6,637. Filed March 29, 1910. Rehearing denied December 15, 1910.]

1. SPECIFIC PERFORMANCE.—*Contracts of Sale of Land.—Description.—Defective.—Parol Evidence to Complete.*—Where the description in a contract for the sale of real estate is consistent, but incomplete, and its completion · does not alter or contradict that which is given, nor require that a new description should be introduced, parol evidence is admissible to complete the description and identify the property. p. 600.

2. CONTRACTS.—*Written.—Application of, to Subject-Matter.—Description.—Parol Evidence.*—Parol evidence is admissible to apply the terms of a written contract to the subject-matter thereof, since the office of a description is not to identify, but to furnish the means of identification. p. 601.

3. CONTRACTS.—*Ambiguities.—Parol Evidence.*—Parol evidence is admissible to clear up ambiguities in a written contract, the result being not to alter or vary the writing but to explain it. p. 601.

4. CONTRACTS.—*Sales of Real Estate.—Description.—Indefinite.—Parol Evidence.*—A contract by a widow for the sale of "all of her interest in the real estate formerly owned by" her deceased husband, contains a sufficient description, when identified by parol evidence, to render the contract enforceable. p. 603.

5. CONTRACTS.—*Sales of Land.—Consideration.—Payment.—Definiteness.*—A contract by which a widow agrees to sell her interest

in certain property "for $3,000," imports that such sum is payable in cash on delivery of the deed. p. 603.

6. CONTRACTS.—*Sales of Land.—Concurrent Delivery of Deed and Payment of Consideration.—Tender.—Specific Performance.*— Where a contract for the sale of land requires the consideration to be paid in cash, it is not necessary for the purchaser to make a tender, where it is shown that he was ready to pay. p. 603.

7. CONTRACTS.—*Sales of· Land.—Delivery.—Statute of Frauds.*—A written contract, that is only a written statement of an oral agreement for the sale of land, need not be delivered to take it out of the statute of frauds. p. 604.

8. CONTRACTS.—*Validity.—Sales of Land.—Statute of Frauds.*—An oral contract for the sale of land is not void, but, by reason of the statute of frauds, is merely unenforceable. p. 604.

9. CONTRACTS.—*Sales of Land.—Written Memorandum.—Sufficiency.*—To render a contract for the sale of lands enforceable, it, or a memorandum containing the necessary parts thereof, must be in writing and signed by the party to be charged, but it is not material who has the writing, or the manner of its execution. p. 604.

10. SPECIFIC PERFORMANCE. — *Unjust Contract. — Incapacity of Party.*—Where an aged widow who had been suffering from nervous prostration, and who was having trouble in regard to her land, in a period of excitement signed a contract for the sale thereof for an insufficient amount, afterwards refusing to execute a deed, or to carry out the contract, and the purchaser was not damaged except by the loss of the profits from the contract, specific performance will not be decreed. pp. 606, 610.

11. SPECIFIC PERFORMANCE. — *Fairness Requisite. — Contracts.*— Courts of equity protect the weak and aged, and refuse to enforce contracts, unless they are fair, equitable and just. p. 608.

12. SPECIFIC PERFORMANCE.—*Discretion of Court.*—The enforcement of specific performance of a contract is not a matter of right, but rests in the sound discretion of the court after considering the particular facts of each case. p. 610.

From Laporte Circuit Court; *John C. Richter,* Judge.

Suit by Lydia E. Ames against Charlotte B. Ames. From a decree for defendant, plaintiff appeals. *Reversed.*

*Hickey & Wolfe,* for appellant.

*Frank E. Osborn, W. A. McVey* and *Lee L. Osborn,* for appellee.

HADLEY, J.—Augustus Ames died testate on March 1, 1906, the owner in fee simple of a farm of 195 acres and

the undivided one-half of three lots in Michigan City, all in Laporte county. He left as his sole heirs and devisees appellant, his widow, and appellee, his adopted daughter. By the terms of his will each of said persons was devised an undivided one-half interest in said real estate as joint tenants. Appellant instituted this suit for partition of said real estate, and to her complaint appellee filed answer in two paragraphs, the first being a general denial, and the second averring that appellant, on October 11, 1906, had executed to appellee a written contract, by which she sold said real estate to appellee, and agreed to convey it to her on the payment of the sum of $3,000, which contract was, in part, as follows:

"October 11, 1906.
This contract between Lydia Ellen Ames and Charlotte B. Ames.
Lydia Ellen Ames sells to Charlotte B. Ames, all of her interest in the real estate formerly owned by Augustus Ames, deceased, for $3,000."

Then follow stipulations as to crops, etc., not material to this discussion, and the contract is signed, "Lydia E. Ames."

It is averred that the real estate described in said complaint was all the real estate in which appellant had any interest or estate derived from Augustus Ames; that appellee made a tender on October 27, which was refused; that appellee was therefore the equitable owner of said real estate.

Appellee also filed a cross-complaint, averring, substantially, the same facts as set out in the second paragraph of answer, with a prayer that the court order specific performance of said contract. Appellant filed a reply in three paragraphs to the second paragraph of answer, the first being a verified general denial, the second averring affirmative matter in the nature of fraud and misrepresentation, the exercise of undue influence over appellant, and the taking advantage of her distress in procuring said contract and that it was never delivered. The third paragraph

avers that said contract was not a written contract, but was part oral and part written, and that there was no money or anything of value paid thereon; that possession had never been surrendered, that no performance of any kind or character had ever been made, and that the contract was without consideration. Appellant also filed an answer in three paragraphs to the cross-complaint, said paragraphs being identical with the paragraphs of reply to the answer. Demurrers were filed to each affirmative paragraph of answer and reply, and to the cross-complaint and the affirmative answers thereto, all of which were overruled and exceptions taken. The court made a special finding of facts and stated conclusions of law thereon, by which conclusions the law was stated to be with appellee, and a decree was entered thereon denying appellant's right to partition, and decreeing specific performance of said contract.

Appellant excepted to the conclusions of law, and also filed a motion for a new trial, which motion was overruled, to which ruling appellant excepted. Error is assigned on the ruling of the court on the demurrers and on the exceptions to the conclusions of law, and to the ruling on the motion for a new trial.

It is insisted, under various exceptions, that the contract set out is insufficient to support a decree for specific performance, for the reason that the description of the 1. land sold is too indefinite and uncertain. It is well established that where the description given is consistent, but incomplete, and its completion does not require the contradiction or alteration of that given, nor that a new description should be introduced, parol evidence may be received to complete the description and identify the property. *Tewksbury* v. *Howard* (1894), 138 Ind. 103; *Maris* v. *Masters* (1903), 31 Ind. App. 235; *Warner* v. *Marshall* (1906), 166 Ind. 88; *Howard* v. *Adkins* (1906), 167 Ind. 184.

It is also settled that parol evidence is competent to apply

the terms of a contract to the subject-matter. *Col-*
2. *erick* v. *Hooper* (1852), 3 Ind. 316, 56 Am. Dec. 505;
*Tewksbury* v. *Howard, supra; Warner* v. *Marshall,*
*supra,* and cases cited.

It is not the office of a description to identify land, but to furnish the means of identification. *Warner* v. *Marshall, supra,* and cases cited.

An indefiniteness or ambiguity that may be made certain or clear by such explanatory evidence as is admissible under the rules of evidence, is not to be treated as vitia-
3. ting the instrument. *Warner* v. *Marshall, supra.*

In such case, while the written contract may not be varied or contradicted by parol evidence, such evidence may be admitted to explain its obscure passages; not for the purpose of changing the contract, but of developing the true sense and intention of the parties. *Warner* v. *Marshall, supra.*

The restrictions of this proposition are illustrated by the following quotation from observations of Mr. Justice Holmes, set out with approval in *Warner* v. *Marshall, supra:* "I do not suppose that you could prove, for purposes of construction as distinguished from avoidance, an oral declaration or even an agreement that words in a dispositive instrument making sense as they stand should have a different meaning from the common one; for instance, that the parties to a contract orally agreed that when they wrote 500 feet it should mean 100 inches, or that Bunker Hill Monument should signify Old South Church [12 Harvard Law Rev. 417, 420]."

The principles to be applied in cases like the present are well defined and settled. The difficulty lies in the application of the principles. We here give some illustrations of obscure descriptions that have been held to be sufficient. "My lot * * * on the plat in the town of South Bend; on the plat of said town on the river bank" *Colerick* v. *Hooper, supra.* "Convey * * * to Thomas Bartlett

* * * all right, title and interest, claim and demand, in and to all the estate, real and personal, * * * which it is or may be our right, * * * to have, hold, or receive as heir at law of Thomas Barnes, lately deceased." *Barnes* v. *Bartlett* (1874), 47 Ind. 98. "All the corn on 200 acres on my farm." *Thomas* v. *Mathis* (1884), 92 Ind. 560. "Three lots in this half block, * * *' this nice house, * * * the rest of this piece of property." *Warner* v. *Marshall, supra.* "The Snow Farm." *Hollis* v. *Burgess* (1887), 37 Kan. 487, 15 Pac. 536. "The Knapp House property." *Goodenow* v. *Curtis* (1869), 18 Mich. 298. "The house and lot now occupied by James H. Benham." *Angel* v. *Simpson* (1887), 85 Ala. 53, 3 South. 758. "Two lots owned by me in One hundred sixteenth street, New York, between Eighth and Ninth avenues, said lots being twenty-five feet front by about seventy-five feet deep." *Waring* v. *Ayres* (1869), 40 N. Y. 357. "My interest in my lands in Lavaca county and also that in Uvalde county." *Ragsdale* v. *Mays* (1886), 65 Tex. 255. "Lot thirty Douglas Park." *Maris* v. *Masters, supra.* "My right in Benjamin Ryder's (my father's) estate." *Ryder* v. *Loomis* (1894), 161 Mass. 161, 36 N. E. 836. "My interest in my mother's estate." *Fowler* v. *Fowler* (1903), 204 Ill. 82, 68 N. E. 414. "Property No. 1031 Milwaukee ave." *Ullsperger* v. *Meyer* (1905), 217 Ill. 262, 75 N. E. 482, 2 L. R. A. (N. S.) 221. "House and land No. 10 Howard street." *Tobin* v. *Larkin* (1903), 183 Mass. 389, 67 N. E. 340. "A conveyance of all land or 'all the property' owned by the grantor, or of all that owned by him in a particular district, is sufficient to convey land within the scope of the description, as is a conveyance of all one's interest in the estate of a person deceased, or of such land as formerly belonged to or was conveyed to a particular person." 2 Tiffany, Real Prop. p. 882.

The answer and cross-complaint aver the devise to appel-

lant by Augustus Ames of the land particularly described therein. They also aver that appellant had no interest in any other lands through Augustus Ames.

4. Neither of these averments is inconsistent or at variance with any of the provisions of the contract. On the contrary, each is in entire harmony with it. These averments were proved, and so found by the court. Supplementing the. contract with these explanations, the land to be conveyed. is fully identified, and the description becomes definite and certain.

It is also contended that the terms are not set out in the contract. The contract specifies payment of $3,000. This implies that the payment is to be in cash. *Angel* v.

5. *Simpson, supra.* The payment and conveyance were to be concurrent. In such cases no further terms are required to be specified. *Tobin* v. *Larkin, supra.* And where payment and conveyance are to be concurrent,

6. it also seems to be the rule that no tender by the purchaser is necessary, where it is shown that he has at all times been ready and willing to perform.

In *Cole* v. *Killam* (1905), 187 Mass. 213, 72 N. E. 947, the court said: "The defense is that plaintiff made no tender of the purchase price. It is true that no formal tender was made, but it was unnecessary. In a case like this, where the stipulations are that the one shall pay the money and the other shall execute a conveyance, and there is no provision that either is to be done first, the covenants are mutual and dependent. The one is not bound to pay without receiving his deed, nor the other to part with his land without receiving his money. The performance must be simultaneous. * * * It is sufficient that when the time comes for the transaction he is able and prepared to pay, and demands the deed. That is sufficient tender of performance. *Irvin* v. *Gregory* [1859], 13 Gray 215."

Counsel for appellant further insist that the evidence is

insufficient to support the finding that the contract was delivered. This contention is met, on the part of appellee, by the proposition that in cases of this character, where the parties meet and orally agree to the terms of a contract, and the terms are reduced to writing, no delivery of the writing is necessary to take the transaction out of the statute of frauds, and in this we must concur.

An oral contract for the conveyance of land is not void, but, by reason of the statute of frauds, it is unenforceable. *Schierman* v. *Beckett* (1882), 88 Ind. 52; *Day* v. *Wilson* (1882), 83 Ind. 463, 43 Am. Rep. 76; *Wills* v. *Ross* (1881), 77 Ind. 1. To render such contract enforceable, it is necessary that the terms and stipulations of such contract be in writing and signed by the party to be charged. The writing does not become the contract, but simply the evidence thereof; and whether it remains in the hands of the one party or the other, if it is properly identified as the full expression of the contract, upon which the minds of the two parties met, it fulfills the purpose of the statute and renders the contract agreed upon enforceable. *Charlton* v. *Columbia Real Estate Co.* (1905), 67 N. J. Eq. 629, 60 Atl. 192, 69 L. R. A. 394, 110 Am. St. 495; *Barry* v. *Coombe* (1828), 1 Pet. 640, 7 L. Ed. 295; *Barkworth* v. *Young* (1856), 4 Drew. 1.

In the case last cited the Vice-Chancellor rendering the opinion said: "It is obvious that there can be no ground to apprehend any such mischief in any case in which you have, under the hand of the party sought to be charged, a written statement of the agreement which he made and of all its terms, and for this purpose it can signify nothing what is the nature or character of the document containing such written statement, provided it be signed by the party sought to be charged; whether it was a letter written by that party to the person with whom he contracted or to any other person, or a deed or other legal instrument, or an answer to a bill, or an affidavit in chancery or in bankruptcy

or in lunacy. Thus where a verbal agreement was made for the sale of land, a letter written by the vendor or purchaser to his own solicitor or agent stating the terms of the agreement, and not intended for the inspection of the other party, has been held to be a sufficient note or memorandum within the intent of the statute.''

In the case of *Barry* v. *Coombe, supra,* Justice Johnson, speaking for the court, pronounces the rule as follows: ''An examination of the cases on this subject will show that courts of equity are not particular with regard to the direct and immediate purpose for which the written evidence of a contract was created. It is written evidence which the statute requires.''

In the case of *Charlton* v. *Columbia Real Estate Co., supra,* the court uses this language: ''Nor does it signify to whom the memorandum is addressed; it may be to a third person, and yet be a good writing to satisfy the statute of frauds. Form is not important. * * * The reason for this is clear. The memorandum is only necessary to evidence the contract, not to constitute it.''

We have no decision in this State, as far as we have been able to discover, directly deciding this point, but it has been decided that a memorandum of a sale of real estate at public auction, entered upon the sale books by the clerk of said sale, is a sufficient memorandum to take the case out of the statute of frauds, and may be specifically enforced. *Hart* v. *Woods* (1845), 7 Blackf. 568.

It is a natural deduction from these cases that the delivery of the memorandum is unimportant, as it would be practically impossible to be made in many cases: As in the case of letters addressed to third persons, or an answer to a bill, or affidavit in chancery, or a letter written to the vendor or purchaser's solicitor, or a memorandum entered on the books of an auctioneer.

The rules governing delivery of deeds and promissory notes do not apply to cases like the present. In the case

of deeds, the delivery is in lieu of "livery of seisin," without which title to real estate cannot be conveyed, and notes are property in the sense that they can be transferred by delivery, and thus transfer the claim for the debts which they represent.

It is also insisted that the contract is not fair and just, and, in view of the circumstances under which it was procured, a court of equity should not enforce it. In considering this question, we shall not weigh the evidence, but shall consider only those facts that are beyond dispute. It is shown by such evidence that on October 11 a neighbor (Mr. Bentz) came to the home of appellant, with his wife, on a visit. When he arrived he was met by appellee's brother, a man by the name of Fisher, of mature years, who talked with Bentz about the trade before he (Bentz) had seen appellant, and solicited his aid in drawing up a contract between appellant and appellee, which, if it did not enlist the coöperation of Bentz, secured his acquiescence in the terms of the proposed contract, and Bentz thereupon set about reducing the stipulations to writing. Appellant was highly excited and nervous, present part of the time and absent part of the time during its preparation. After the contract was signed, Bentz took the contract to appellee, gave it to her to read, and she handed it back to him, saying that it was satisfactory to her. He then told appellee that he would leave it at Hall & Weaver's bank, so that neither one separately could get it, but both together could. Before or after Bentz went to appellee with the contract (the evidence is conflicting as to time) appellant called Bentz aside and asked him what that paper was she had signed. Bentz testified that he told her: "It is a contract." He also told her that she had gone back on her contract before in regard to selling the place, and it was merely to bind her so that she could not go back on her word this time. Appellant testified that she said: "What's this paper; is it anything binding, or anything legal? Be-

·cause if it is, I never would have signed it. If I had known it was I would not have signed it.'' And Bentz said. ''As I understand it, it is simply a memorandum that you are .going to talk over.''

It is further shown by the undisputed evidence that appellant was sixty-two years old and had been suffering from nervous prostration continuously since the death of her husband in April; that appellee's brother, who conducted all the negotiations.for appellee, had lived in appellant's family or on the farm, controlling and managing it ever since her marriage with Augustus Ames, some seven years previously; that she depended upon him and had confidence in him; that she had never bought or sold land, and knew nothing ·of the value of land; that immediately prior to the making ·of the contract appellant's hired help had left her, and she had no one to milk her cows, feed her stock, harness and ·unharness her horses, put away her vehicles, and perform ·other necessary work about the place, and, as she expressed it on that day, ''she was desperate, and felt she had to do .something.'' And while it does not appear that she was in a state of mind amounting to legal incapacity, it is clear that she was not in a physical or mental condition to exercise considerate judgment, or fully to comprehend business transactions and properly guard her interests in the disposition of her property, that at that moment was a troublesome and distracting burden.

Bentz deposited the contract in Hall & Weaver's bank, .as suggested, and on October 13 the parties met in Laporte, got the contract, and proceeded to the office of appellant's attorney, where, after consultation with her attorney, she refused to go on with the trade.

It is also shown that the property was worth from $10,-000 to $15,000, in which appellant had a one-half interest as joint tenant. What her interest at that time was reasonably worth, does not appear. But that appellee considered the trade an ·advantageous one to herself is clearly

evidenced by her efforts to hold appellant to her bargain. That appellant did not comprehend the nature of the contract she had entered into, is shown by her interrogation of Bentz, who had written said contract, shortly after she had signed it.

It is also undisputed that appellee was *in statu quo* at the time appellant repudiated the contract. Appellee had paid nothing on the contract, had done nothing under it, had assumed no liabilities, had not taken possession of, nor made any improvements on, said real estate; in fact, had made no change in her condition by reason thereof. It is clear, therefore, that a denial of performance could work no injury to her, except to deprive her of a good bargain, which, as we believe, she was not entitled to profit by under the circumstances. It does appear, however, that to decree performance would work an injury to appellant.

Courts of equity are and ever should be mindful of the weak and aged. It is their duty carefully to guard and zealously to protect the interests of those who, by reason of the infirmities of age or disease, or both, are unable fully to protect themselves from the avarice of the shrewd and masterful; and where, as here, it is the young and vigorous that are seeking to enforce an advantageous bargain of large consequence against one who at the time is in no mental condition to engage in business matters of such moment, such court will scrutinize all the circumstances and details of the transaction, and resolve all doubtful questions in favor of the weaker suppliant.

It is an established equity principle that a contract must be equal in all its parts. It must be fair, reasonable and just, and one which it is strictly equitable to decree shall be specifically performed. *Modisett* v. *Johnson* (1831), 2 Blackf. 431; *Goodwine* v. *Kelley* (1904), 33 Ind. App. 57; 1 Story, Eq. Jurisp. (11th ed.) §750; Fry, Spec. Perf. (3d Am. ed.) §§368, 369.

The authority last cited states the principle very lucidly, as follows: ''There are many instances in which though there is nothing that actually amounts to fraud, there is nevertheless a want of that equality and fairness in the contract which, as we have seen, are essential in order that the court may exercise its extraordinary jurisdiction in specific performance.'' Fry, Spec. Perf. (3d Am. ed.) §368. And continuing, the learned author says: ''In judging of the fairness of a contract, the court will look not merely at the terms of the contract itself, but at all the surrounding circumstances—such as the mental incapacity of the parties, though falling short of insanity, their age, * * * the manner in which the contract was executed, the circumstances that the parties were acting without a solicitor, * * * or that the price was not the full value. Therefore whenever there are evidences of distress in the party against whom performance is sought, * * * or want of advice, or anything which seems to import that there was not a full, entire and intelligent consent to the contract, the court is exeremely cautious in carrying it into effect.'' Fry, Spec. Perf. (3d Am. ed.) §§380, 381.

For illustrative cases of unfairness, analogous to the case at bar, see *Ratterman* v. *Campbell* (1904), 26 Ky. Law 173, 80 S. W. 1155; *Horsley* v. *Asher's Heirs* (1893), 94 Ky. 314, 22 S. W. 434; *Howes* v. *Barmon* (1905), 11 Idaho 64, 81 Pac. 48, 69 L. R. A. 568, 114 Am. St. 255; *Miller* v. *Tjexhus* (1905), 20 S. Dak. 12, 104 N. W. 519; *Clarkson* v. *Hanway* (1723), 2 P. Wms. *203; *Gartside* v. *Isherwood* (1783), 1 Bro. C. C. *558; *Martin* v. *Mitchell* (1820), 2 J. & W. *413; *Bell* v. *Howard* (1742), 9 Mod. 302; *Stanley* v. *Robinson* (1830), 1 R. & M. 527; *Kemeys* v. *Hansard* (1815), P. Coop. *125; *Johnson* v. *Nott* (1684), 1 Vern. 271.

It is also a settled principle of equity that the enforcement of specific performance of a contract is not a matter

of right, but rests in the sound discretion of the court, and the court will do what seems just and equitable under the peculiar circumstances of the particular case. *Boldt* v. *Early* (1904), 33 Ind. App. 434, 104 Am. St. 255; *Ratterman* v. *Campbell, supra.* But this discretion is not an arbitrary one. It must be governed by the well-settled principles of equity. 1 Story, Eq. Jurisp. (11th ed.) §742.

In the very nature of the case there must appear some injury in the refusal to perform before a court is warranted in awarding a decree of performance. As we have seen in this case, the refusal of performance by appellant at the time it was made put appellee in exactly the same position she was in before the contract was entered into. In such case, it does not seem that there are any grounds for equitable interposition. *Howes* v. *Barmon, supra.*

Taking this fact into consideration, along with the facts and circumstances surrounding the whole transaction, and applying the equitable principles by which we must be governed, it is our opinion that the evidence does not sustain the findings, and that a new trial should have been granted.

Our decision upon the questions we have discussed determines all questions upon the pleadings. The demurrers to the paragraphs of answer and to the cross-complaint were properly overruled.

Judgment reversed, with instructions to grant a new trial.