[No. 20104. Department One. January 6, 1927.]

LOUIS K. CHURCH *et al., Appellants,* v. SARAH CARTER BRUCE *et al., Respondents.*[1]

[1] SPECIFIC PERFORMANCE (6-1)—DEFENSES—ENFORCEMENT INEQUITABLE OR INVOLVING HARDSHIP. The granting of specific performance is a matter of discretion and it is properly denied as to an option to sell an elderly lady's home where the medical and preponderance of the evidence was to the effect that, although not totally incapacitated, she was mentally incompetent to transact inportant business matters.

Appeal from a judgment of the superior court for King county, Moriarty, J., entered April 5, 1926, upon findings in favor of the defendants, in an action to enforce specific performance of a contract. Affirmed.

[1]Reported in 251 Pac. 854.

*Grinstead, Laube & Laughlin* and *Frank R. Jeffrey,* for appellants.

*Peters & Powell* and *Robert H. Evans,* for respondents.

MAIN, J.—This is an action to enforce specific performance of a written option to sell certain real estate. One of the defenses interposed was that the defendant Sarah C. Bruce (who will be referred to as though she were the only adverse party) was mentally incompetent at the time the contract was executed. The trial court, in a memorandum opinion, sustained the defense of incompetency and entered a judgment dismissing the action, from which the plaintiffs appeal.

The property involved is the home of the respondent in which she has resided for many years, and in which she and her husband resided prior to his death some years ago. On March 15, 1925, the respondent, being then seventy-one years of age, signed a written option by which she agreed to sell the property to the appellants for a price stated. Fifty dollars was paid at the time of the execution of the contract. Later the respondent declined to go on with the transaction and returned the fifty dollars. The appellants thereupon brought the present action.

[1] The controlling question is whether the respondent was mentally incompetent at the time she executed the contract. The evidence of the appellants on this question falls into two general classes: First, witnesses who had known the respondent casually and testified as to her competency, and second, one witness who had been employed by the respondent during the latter part of the year 1924 as a domestic about the house and after a few months was discharged. This witness was very positive in her statements as to the mental capacity of the respondent. The evidence

offered on behalf of the respondent as to her mental capacity likewise falls into two classes: First, witnesses who had known her for many years and had seen her frequently and who testified to her incompetency, and second, the doctors who had attended her since she suffered a cerebral hemorrhage in 1916, which at the time caused the complete paralysis of her right side. One of the doctors who attended her from that time until 1921, when going away for a time he gave her care over to another doctor, testified:

"The control of the muscles was destroyed by the hemorrhage of the brain, and the brain cells haven't regenerated. So far as any definite reasoning is concerned, that is impaired. Her judgment is impaired. She is very easily influenced. She would come to the office and in a few minutes I could have her crying or have her laughing. That is true, I think, up to the present time. I continued to treat her until August, 1921, at which time I left her in the hands of Dr. Thomas Douglas. She has dropped into my office several times since my return, just to visit me. I have seen Mrs. Bruce this year. The last time I saw her she was greatly agitated because of some transaction, which was the reason she came to see me. If I had the case in charge I would not permit her to appear on the witness stand. Her blood pressure is too high. She might have a cerebral hemorrhage on the stand. Her memory is very poor. I would say that she has not been competent since this stroke to transact business affairs of importance."

Further, on cross-examination, the doctor testified:

"As far as any active reasoning is concerned, she cannot reason consecutively on any subject for any length of time."

The doctor, who attended her from the year 1921 down to the time of the trial, testified:

"She was not capable, in my judgment, of transacting important business on or about March 15th,

1925. She has not been able to transact any business since I started to take care of her in 1921. I don't think she has been possessed of mental capacity to do that. I would not allow her to take the witness stand."

While it is true that respondent was not totally mentally incapacitated, yet her mental condition was such as shown by what appears to us to be the great weight of the testimony that she was not competent to transact important business matters. Certainly the sale of her home, to which she was attached and upon which she had resided for many years, was an important business transaction. Whether specific performance of the contract will be decreed rests in a sound judicial discretion, which is controlled by established principles of equity, and is exercised having in view all the facts and circumstances of the particular case. In Pomeroy on Specific Performance of Contracts (3d ed.) § 35, it is said:

"Even where a contract belongs to a class susceptible of enforcement, the right to its specific performance is not absolute, like the right to recover the legal judgment. The granting this equitable remedy is a matter of discretion; not, indeed, of an arbitrary, capricious discretion, synonymous with the mere pleasure of the judge; but of a sound, judicial discretion, controlled by established principles of equity, and exercised upon a consideration of all the circumstances of each particular case. Where, however, the agreement is in writing, is certain in its terms, is fair and just in all its provisions, is for a valuable consideration, and is capable of being enforced without hardship to either party, it is as much a matter of course for a court of equity to decree its specific performance, as for a court of law to award a judgment of damages upon its breach."

Where the person against whom specific performance of a real estate contract is sought is aged or infirm and the evidence shows mental incapability of

dealing with judgment and discretion, courts of equity are not inclined to decree such performance. *Ames v. Ames,* 46 Ind. App. 597, 91 N. E. 509; *Ratterman v. Campbell,* 26 Ky. Law 173, 80 S. W. 1155; *Miller v. Tjexhus,* 20 S. D. 12, 104 N. W. 519.

The appellant cites the case of *Lean v. Leeds,* 92 N. J. Eq. 455, 114 Atl. 402, as presenting a situation somewhat similar to the present case. In that case, however, as stated in the opinion, "there is no evidence in this case that indicates that the vendor was not entirely normal and capable of normal action at the time . . . . " In the present case, as already indicated, there is such evidence.

The judgment will be affirmed.

TOLMAN, C. J., MITCHELL, FULLERTON, and HOLCOMB, JJ., concur.