No. 22,859.

FLOYD ARNETT et al., *Appellees,* v. SARAH J. WESCOTT et al.,
*Appellants.*

SYLLABUS BY THE COURT.

1. SPECIFIC PERFORMANCE—*Contract for Sale of Land—Memorandum in
   Writing—Statute of Frauds.* The statute of frauds does not require
   that the memorandum of sale shall consist of a single instrument.
   Where a contract for the sale and purchase of real estate is not of
   itself sufficient, being signed only by the purchaser and a third party
   who has no title, but who represents the vendors through an oral
   arrangement with them, and at the same time the vendors execute
   their warranty deed pursuant to the contract of sale to be delivered
   to the grantee on his compliance with the conditions of the sale, such
   deed, although undelivered, may be considered and construed together
   with the contract of sale, and if from both the contract sufficiently
   appears, specific performance thereof will be decreed. (*Schneider v.
   Anderson,* 75 Kan. 11, 88 Pac. 525.)

2. SAME—*Evidence Sustains Findings.* Evidence considered, and held sufficient to sustain the findings and judgment.

Appeal from Cowley district court; OLIVER P. FULLER, judge. Opinion filed November 6, 1920. Affirmed.

*S. C. Bloss,* of *Winfield, Sam K. Sullivan,* and *J. H. Hill,* both of Newkirk, Okla., for the appellants.

*W. L. Cunningham,* of Arkansas City, for the. appellees.

The opinion of the court was delivered by

PORTER, J.: The appeal is from a judgment directing the specific performance of a contract wherein John A. Boylan agreed to convey to J. W. Wilson a farm of 160 acres in Cowley county.

In her lifetime the legal title was in Martha A. Scott. She died intestate August 7, 1910, and one-half of the property descended to her eight children and one-half to their father, Robert B. Scott. Robert B. Scott owned another farm of 160 acres, and upon his death in 1911 the full title to both farms vested in the eight children. The heirs were of full age, and all except Nancy C. Boylan were nonresidents, some living in Oklahoma and others in Missouri. John A. Boylan, husband of Nancy C. Boylan, had been acting as the agent of all the heirs, looking after both farms, collecting the rents and paying the taxes. Some years before he had, on behalf of the heirs, sold the farm they had inherited from their father, and for several years had had an arrangement with them to sell the farm in controversy at a fixed price. He was also the administrator of the estate of Robert B. Scott. In July, 1917, he entered into a written contract to sell the farm to one of the plaintiffs, J. W. Wilson, for $11,500, the price the heirs had agreed upon, and the contract was deposited in a bank, together with Wilson's check for $1,000; the balance to be paid when the title papers were perfected. Boylan prepared a deed for the heirs to sign, reciting the consideration and designating the grantors as the only heirs at law of Martha A. Scott, deceased, and Robert B. Scott, deceased. The deed. was sent around among the heirs, and all except Alec Scott signed and acknowledged it for the purpose of carrying out

the contract.   Alec Scott and his wife refused to sign, not because of any dissatisfaction with the terms of the sale but because Alec claimed that in the sale of the father's farm the other heirs had defrauded him out of $500 of his share.   J. W. Wilson, in the meantime, had arranged to sell the property to the other plaintiffs, Arnett and Foster, for the same price at which he was to purchase it.   The heirs who had signed the deed, together with Wilson and Arnett, consulted an attorney, who advised them that there were three things they might do: *first,* the plaintiffs could take the deed executed by seven of the eight heirs; *second,* a suit in partition could be brought (which Wilson and Arnett claim they understood would force the sale of the one-eighth interest belonging to Alec Scott), and *third,* the plaintiffs could abandon the contract.   Boylan wanted to see the contract carried out and induced some of the heirs to bring suit for partition, and suit was filed.

The sale in partition occurred in April, 1918.   Boylan did not guarantee that Wilson would get the farm at the agreed price, but Boylan wrote him shortly before the sale that the only thing left for them to do was "to go up and bid it in if we can and hope no one will run it up higher than the price we had set."   Wilson and Arnett attended the sale and bid the amount they had agreed to pay Boylan.   W. S. Scott and Ross Scott bid $12,000 and the property was struck off to them, and afterwards the sale was duly confirmed.   On October 24, 1918, the check Wilson had left in the bank with the contract was taken down by him.   The contract itself was left in the bank. Afterwards on July 27, 1919, another check for $1,000 was placed in the bank payable to John A. Boylan.   This was after the plaintiffs determined to begin suit for specific performance.

Two propositions are insisted upon.   First, that there was no written contract between plaintiffs and the defendant heirs, and especially none between plaintiffs and W. S. Scott and Ross Scott, who now hold the title by virtue of their purchase at the partition sale.   There was a written contract, however, between Boylan and Wilson, which is the contract the court ordered performance of.   It is urged that Boylan only purported in the contract to act for the defendants, but that, in fact, he had no authority to act in their behalf or, at least, that there was no way to prove that authority.   That he did act in

their behalf and under their authority are facts determined by the court, and there was abundant evidence to sustain the finding. It is of no consequence at all that in signing his name to the contract with Wilson, Boylan added the letters "Admr." It is conceded that as administrator he had no authority to make such a contract; in fact, he never claimed to possess such authority. He claimed to represent the defendant heirs under some arrangement with them, and Wilson so understood. If, in fact, he did have authority, though not in writing, to represent the defendant heirs, a court of equity would have the power, in a proper case, to compel the defendants to perform the contract, providing, of course, there was some memorandum in writing signed by the defendants which is sufficient to take the case out of the statute of frauds.

The chief contention of the defendants is that there was no such memorandum. They say that the warranty deed signed by them was never delivered, and therefore is not a sufficient memorandum. The appeal is prosecuted particularly in the interest of W. S. Scott and Ross Scott, who claim title under the partition sale. They testified, in substance, that they understood John Boylan had contracted to sell the land to Wilson for the amount expressed in the deed, which was agreeable to them; that they signed the deed to carry out the agreement, whatever it was; they remembered about the sale of the other place negotiated by Boylan in the same way. Boylan was named as a defendant because of his wife's interest. He testified that he was the agent of the owners to sell the place; that he sold it, and that all of them, including Alec, were satisfied with the price and terms.

There can be no question that the deed was executed for the purpose of carrying out the contract made by Boylan with Wilson. Although not finally delivered, it was evidence of a ratification and confirmation by those who signed it of the contract Boylan had made as their agent. (*Painter v. Fletcher*, 81 Kan. 195, 105 Pac. 500.) Two of the heirs who had thus ratified the contract to convey obtained the whole title by virtue of the partition sale, and it is clear that a court of equity has the power to compel them to perform their contract and to convey the title subsequently acquired. Nor is delivery of the deed essential in order to establish the oral contract. If the

deed has been executed it may, and often will, constitute a sufficient memorandum of the oral contract. The writing required by the statute is merely evidence of the contract and is not the contract itself.

"The writing does not become the contract, but simply the evidence thereof; and whether it remains in the hands of the one party or the other, if it is properly identified as the full expression of the contract, upon which the minds of the two parties met, it fulfils the purpose of the statute and renders the contract agreed upon enforceable." (*Ames v. Ames,* 46 Ind. App. 597, 604.)

In *Schneider v. Anderson,* 75 Kan. 11, 88 Pac. 525, it was held that—

"A writing . . . and an undelivered deed, executed by the grantor at the same time and as part of the same transaction, which is deposited by the parties in escrow, constitute a sufficient memorandum of a contract for the sale of lands to satisfy the statute of frauds." (Syl. ¶ 1.)

In the opinion it was said:

"The courts are at variance upon the question whether a deed alone, when executed by the vendor and deposited in escrow, to be delivered by the depositary to the grantee upon his paying the purchase price or performing some other condition, is itself a sufficient memorandum to avoid the statute of frauds. (The cases are cited in 29 A. & E. Encycl. of L. 855.) A majority say that the deed alone is not a sufficient memorandum. But the better reasoning seems to be the other way. The ground usually stated for holding that the deed is not a sufficient memorandum is that, until it is finally delivered or the condition is performed, it does not constitute a contract. The reason given seems to be beside the question, which, in this character of cases, is not, Was there a written contract? but is, Is there a sufficient memorandum signed by the party which is evidence that a contract existed or which tends to prove that fact? The evil the statute seeks to guard against is the use of oral evidence to prove a contract. This is obviated by the production of the deed which is a memorandum of a contract . . .

"By far the best reasoned case we have examined is *Jenkins v. Harrison,* 66 Ala. 345, followed in *Johnston v. Jones,* 85 Ala. 286, 4 South. 748. It is said in the former case: 'A deed, drawn and executed with the knowledge of both parties, with a view to the consummation of the contract of sale, which, in itself and of itself, embodies the substance, though not all the details or particulars of the contract, naming the parties, expressing the consideration, and describing the lands, though not delivered, and its delivery postponed until the happening of a future event, is a note or a memorandum of the contract sufficient to satisfy the words, the spirit, and the purposes of the statute of frauds.'" (pp. 16, 17. See note to same case, 121 Am. St. Rep. 356, 362, and note, 132 Am. St. Rep. 811, 813.)

The defendants insist that the case of *Schneider v. Anderson,* supra, goes no further than to hold that a deed may be a sufficient memorandum, but they insist that the contract sought to be enforced must be the same as the one shown in the deed, and they say that the contract between Boylan. and Wilson provided for the payment of $1,000 in cash and $10,500 on the 1st day of October, 1917, while the deed provided for payment of $11,500 in cash, and that there is a material variance between the contract and the deed. We think there was no variance. Both the contract and the deed contemplated a cash transaction. Obviously, the parties understood that the entire consideration was to be paid upon delivery of the deed. Several things remained to be done, the execution of the deed by all the parties, the furnishing of an abstract and its approval. The $1,000 deposited with the contract and the $10,-500, which was to be paid when the transaction was closed, would constitute a cash payment of the entire consideration.

In *Anderson v. Anderson,* 75 Kan. 117, 88 Pac. 743, the written contract relied upon consisted of letters signed by the parties to be bound thereby which had been lost or destroyed, and secondary evidence of the contents was held sufficient to establish the written contract. In that case, however, the contract had been performed on the part of the plaintiff.

Since an undelivered deed may constitute a sufficient memorandum, it is of no importance which party has the instrument in its possession or where it comes from. If the memorandum or writing "signed by the party to be bound thereby" is not in the possession of either party; if it be found discarded and abandoned in some ash heap or floating about the streets, and is produced at the trial and shown to have been signed by the parties sought to be bound, and otherwise answers the requirements of the statute, it is sufficient.

In *Ames v. Ames,* supra, it was said in the opinion:

"Thus where a verbal agreement was made for the sale of land, a letter written by the vendor or purchaser to his own solicitor or agent stating the terms of the agreement, and not intended for the inspection of the other party, has been held to be a sufficient note or memorandum within the intent of the statute." (p. 605.)

The opinion cites the case of *Barry v. Coombe,* 26 U. S. 640, where it was said:

Arnett v. Wescott.

"An examination of the cases on this subject will show that courts of equity are not particular with regard to the direct and immediate purpose for which the written evidence of a contract was created."   (p. 651.)

In *Charlton v. Columbia Real Estate Co.*, 67 N. J. Eq. 629, 69 L. R. A. 394, the court said:

"Nor does it signify to whom the memorandum is addressed; it may be to the third person, and yet be a good writing to satisfy the statute of frauds.   Form is not important  .  .  .  the reason for this is clear. The memorandum is only necessary to evidence the contract, not to constitute it."   (p. 633.)

The second of the two points presented is that the facts conclusively establish an abandonment by the plaintiffs of their contract after the partition sale.   In the same connection it is urged that plaintiffs drew down the $1,000 check deposited and afterwards made no tender of the consideration.   The same facts are used as a basis for the contention that if there was no actual abandonment, plaintiffs were guilty of laches in not commencing the suit until almost a year after the sale in partition.   It was not necessary for plaintiffs to make a tender before beginning the suit, because of the attitude defendants took in asserting title.

"If the defendant puts himself in an attitude of default tender to him is unnecessary.   It could serve no purpose so far as he is concerned and would be a mere formality.   Equity does not insist on purposeless conduct and disregards mere formalities.   Consequently all that is required in such cases is that the plaintiff shall place himself in favor with the court, and this may be done by a proper offer in the pleadings." (*Niquette v. Green,* 81 Kan. 569, 581, 106 Pac. 270.)

The trial court found that there had been no abandonment, and no laches.   As was said in another case for specific performance of a contract for the sale of real.estate:

"When the court found all the facts in this case to be as the plaintiff contends, and found the affirmative defenses of the answer to be untrue, no course was open but to decree specific performance.   The evidence fully supports the judgment." (*Painter v. Fletcher,* 81 Kan. 195, 105 Pac. 500.)

The judgment is affirmed.