No. 22,760.

JEANNETTE NEAL, *Appellee*, v. M. D. OWINGS and LILLIE R. OWINGS, *Appellants*, and THE FIRST STATE BANK OF MINNEOLA, *Appellee*.

SYLLABUS BY THE COURT.

1. SPECIFIC PERFORMANCE—*Contract for Sale of Land—Contract and Deed Placed in Escrow to Await Performance by Purchaser—Purchaser Complied with Contract—Depositary at Request of Vendor Refused Delivery of Deed—Delivery of Deed Ordered.* An owner of land employed a broker to negotiate a sale of it at a fixed price and on prescribed terms. The broker procured his wife as a purchaser of the land, notified the owner of the fact and sent him a contract of sale, but the owner found provisions in it that were not satisfactory and then set out conditions which he stated would be satisfactory to him. A contract which met his requirements was prepared and forwarded to him together with a deed ready for execution. The owner did not execute the conveyance at once, stating as a reason for the delay that his wife refused to join in the execution of the conveyance. After consulting with a friend and receiving a letter from the attorney of the purchaser as to the rights and liabilities of the owner and purchaser, the contract was signed, the deed executed by the owner and his wife, and these were placed in the possession of a depositary agreed upon, to be delivered upon compliance by the purchaser with the conditions of the sale. The purchaser found the abstract of title to be satisfactory, accepted the conditions of sale and was proceeding to complete the transaction when the owner notified the depositary to withhold delivery of the conveyance, and this request the depositary observed. In an action against the depositary and the owner and his wife, it is held that a valid contract of sale was made, and that by the placing of the executed deed in the hands of the mutually chosen depositary to be delivered upon compliance with the conditions of the contract by the purchaser and the subsequent compliance with these conditions, the purchaser became the equitable owner of the land and entitled to a delivery of the deed.

2. SAME—*Refusal to Deliver Deed Not Justified.* The notice given by the owner to the depositary to withhold delivery of the instrument, did not justify the depositary in refusing a delivery.

3. SAME—*Transfer of Title—Manual Delivery of Deed Not Essential.* Under the circumstances a manual delivery of the deed to the purchaser was not essential to the transfer of the equitable title to the land to her.

4. SAME—*Action to Compel Delivery of Deed Proper Remedy* Upon the refusal of a delivery of the deed the purchaser brought an action against the owner and his wife who were asserting that the contract

was invalid and also against the depositary to have adjudicated the right to a conveyance and to compel a delivery of the deed placed in the hands of the depositary. *Held*, to be a proper remedy.

5. SAME—*Memorandum in Writing—Statute of Frauds.* The contract, deed and instruction to the depositary as to delivery, constituted a sufficient memorandum in writing to take the transaction out of the statute of frauds.

6. SAME—*Voluntary Execution of Deed—No Coercion.* The claim, that the execution of the deed was involuntary and invalid because the attorney of the purchaser in a letter to the owner stated that the contract was binding upon him and that if it was not carried out he would bring an action to compel the completion of the contract is without merit.

7. SAME—*Advance in Value of Land.* The failure of the broker to inform the owner of a slight advance in the value of lands is held under the circumstances not to be a good ground of defense to the action brought by the purchaser.

8. SAME—*Identity of Purchaser Known to Vendor.* The owner being fully informed that the purchaser was the wife of the broker before the contract and deed were executed, the relationship furnished no ground for refusing to complete the transaction.

9. SAME—*Terms of Contract Complied with by Purchaser.* The evidence examined, and it is held that it was sufficient to show a substantial compliance with the contract conditions by the purchaser, including the tender of sufficient amount as a cash payment for the land.

10. SAME—*Appointment of Receiver—Proper Remedy.* It was competent for the court to appoint a receiver to care for crops involved in the sale and to prevent waste and deterioration of the property during the period of litigation.

Appeal from Clark district court; LITTLETON M. DAY, judge. Opinion filed December 11, 1920. Affirmed.

*Robert C. Mayse,* of Ashland, for the appellants.

*Francis C. Price,* of Ashland, for appellee Jeannette Neal, and *J. B. Hays,* of Minneola, for appellee The First State Bank of Minneola.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an equitable proceeding to compel the delivery of a deed and the completion of a transfer of a tract of land, and from a judgment in favor of Jeannette Neal, the defendants, M. D. Owings and Lillie R. Owings, appeal.

M. D. Owings, who owned five hundred and twenty acres of land, listed the tract for sale with Nate Neal for the fixed price of thirty dollars per acre. About nine months later the agent notified Owings, who was then in California, that he had found a purchaser for the tract at the price fixed, one-half of the purchase price to be paid in cash, and the balance to be paid on or before five years, secured by a mortgage upon the land. He sent a contract signed by him in behalf of the owner, and also a general-warranty deed to be executed by the owner to Jeannette Neal, who was the wife of the agent. With this he sent an advance payment of $200 as earnest money, and requested that the papers be signed and, with the abstracts, sent to the First State Bank of Minneola with instructions to the bank to deliver the deed on the payment of the first half of the purchase price and the execution of the mortgage. He also stated that the agent's commission was to come out of the cash payment made upon the land. The defendant Owings declined to accept the contract as made and suggested several changes that would satisfy him, namely, that the earnest money should be increased from $200 to $1,000; that it contain a stipulation that the purchaser would only get one-third of the growing crop, and to provide that he should get no part of the crop unless the first half of the purchase price was paid before the crop was harvested; a recital that Owings did not own or sell a certain windmill and fence on the premises which belonged to another; also that he did not own or sell a crop growing on a small strip of his land that was named. He further required that a statement be placed in the contract as to the exact amount to be paid as the agent's commission. The purchaser agreed to all the changes proposed and a contract was prepared and signed in accordance with the directions of Owings. This, together with a deposit slip showing that the $1,000 of earnest money had been deposited to his credit in the bank, was sent to Owings. It was also stated that the purchaser was ready to comply with the conditions of the contract as soon as the abstracts were produced showing a merchantable title, and further that the commission of the agent was $415, which was to be taken out of the cash payment when the abstracts were approved. Within a few days Owings wrote the agent that his wife had declined to sign the deed, that he had endeavored to procure her signa-

ture but had been unable to do so and stated some of her objections. In reply to this letter the agent wrote that the purchaser insisted on the completion of the contract that had been made in accordance with his directions and referred him to Judge Price, who had been employed to represent the purchaser. A letter was written by Judge Price stating that he had been instructed by the purchaser to take the matter up with Owings and that if the transfer was not made to bring a suit to compel specific performance. He advised them as to the nature of the contract that had been made and the obligations of the parties under it, asking that they write him at once and that unless the contract was carried out suit would be immediately commenced. Shortly after receiving the Price letter, Owings and his wife joined in the execution of the deed, which they forwarded to the bank with instructions to the bank to bring the abstracts up to date and to close the transaction according to the contract. Directions were also given as to the release of certain mortgages and advising that when the first payment was made and the note for the unpaid balance and the mortgage securing its payment were executed, to deliver the deed to the plaintiff, and then to forward the note and mortgage to him together with a certificate of deposit for the cash payment. When the bank received the contract, the deed, abstracts and other papers, it brought the abstracts up to date and presented them to the plaintiff. Upon examination of the abstracts by the purchaser, the title was found to be satisfactory and the terms of the contract were accepted. The plaintiff placed the cash payment in the bank less the amount of the agent's commission, and also the note and mortgage duly executed. On the same day, but before the deed was delivered or payment made, the bank received a telegram from Owings telling them not to deliver the deed, and in a letter to the bank he stated that, unless he was compelled to, he was not going to deliver the deed. In the letter he authorized the bank to pay the agent the commission provided for in the contract and directed it to return to the purchaser the earnest money that had been advanced. The present action was then brought and the bank was made a defendant. It admitted the allegations of the plaintiff to be true, tendered to the court all the money received and also the papers and documents relating to the trans-

Neal v. Owings.

action that had been placed in its possession and asked that it be dismissed from the action with its costs. The other defendants denied the authority of the agent, alleged that he had been dilatory in finding a purchaser, and had concealed from the owner the fact that there had been an increase in the value of land, and further that the land was really purchased by the agent for himself in the name of his wife. He further alleged that the contract was made and the deed executed and sent to the bank involuntarily, in that it was done because of the statements of Judge Price, which induced him to believe that the contract was binding upon him, and he alleged that but for these statements the deed would not have been executed. Mrs. Owings alleged that the deed executed by her was not her voluntary act, but that her signature was obtained because of the statements in the Price letter, and she set forth other defenses alleged by her husband. Upon application of the plaintiff a receiver was appointed to take care of the rentals accruing on the land during the pendency of the action, and to do such other acts as were necessary to protect the rights of the parties therein.

The first contention of the defendant is that the court erred in appointing a receiver. The case was peculiarly one for the appointment of a receiver. (*O'Laughlin v. Prockish,* 106 Kan. 616, 189 Pac. 383.) There were growing crops on the land in which plaintiff was interested in case she prevailed in the litigation. It was also important that the cultivable land should be put in crops during the period of litigation and to prevent deterioration and waste. This was the extent of the power given to the receiver. According to plaintiff's allegation the contract had been made, the deed executed and both placed in the bank for delivery upon compliance with conditions which it is averred were performed by plaintiff. These things, if shown, made the plaintiff the equitable owner of the land and entitled her to the delivery of the deed. Under these circumstances the covenants of the deed would relate back to the time of the contract and the plaintiff would be entitled to the rents accruing after that date. (*Scott v. Stone,* 72 Kan. 545, 84 Pac. 117.) Under the pleadings and the showing made on the application as to the crops and the condition of the land, it was for the interest of both parties that a receiver be appointed to care for

the crops and to prevent waste. This appears to have been the view of the defendants as well as of the plaintiff. Two mortgages were upon the land which were due and required attention, and both parties recognized the necessity of a receiver and practically ratified the appointment when they agreed in open court that the receiver should use the money derived from rent of the land to pay the mortgage debt.

Elaborate findings of fact were made by the court from which those already recited have been taken. As to the vital facts there is practically no dispute, and indeed there is little ground for controversy as to the rights of the parties. A contract of sale was finally made which embodied all the conditions named by the defendants. The deed was executed and placed in the hands of the mutually chosen depositary. The defendant directed the bank to deliver the deed upon compliance with the terms of the contract. Substantial compliance with the agreed conditions was made by the plaintiff, and when this was done, the plaintiff became the equitable owner of the land. The manual delivery of the deed was not essential to a transfer of the equitable title as the delivery to the bank was in legal effect a delivery of it to the grantee. (*Davis v. Clark,* 58 Kan. 100, 48 Pac. 563; *Gault v. Hurd,* 103 Kan. 51, 172 Pac. 1011. See, also, *Baker v. Snavely,* 84 Kan. 179, 114 Pac. 370; *Akins v. Holmes,* 89 Kan. 812, 133 Pac. 849.) It is suggested by defendants that under the issues as formed only the delivery of the deed was involved in the case and that the court was not warranted in adjudicating other issues. If the only question raised by defendants had been the failure of the depositary bank to deliver the deed the action might have been brought against the bank alone, but the grantors were asserting misrepresentation and fraud and attacking the validity of the escrow agreement. It was therefore proper to bring the grantors and depositary into court and thus procure a determination of the existence and validity of the contract, and whether there had been compliance with its conditions as well as the right of the plaintiff to the delivery of the deed. It is a rule of equity that all matters involved in a controversy between parties to a suit shall so far as practicable be adjudicated in that suit, and thus put an end to the litigation.

The defendants suggest that the contract was not valid be-

cause not sufficiently committed to writing to avoid the statute of frauds. There is no room for controversy on this question. The contract was drawn as directed by defendants; the deed was executed in accordance with the terms of the contract. It was deposited in the bank with written instructions to deliver it according to the stipulations, and the letter addressed to the agent stated that the deed had been signed and placed in the bank with instructions to close the deal. All these writings taken together constitute a sufficient memorandum of the contract to satisfy the statute. (*Schneider v. Anderson,* 75 Kan. 11, 88 Pac. 525.) While Mrs. Owings did not sign the contract she joined her husband in making and acknowledging the deed, which was executed in pursuance of the terms of the contract, and intrusted it to her husband for delivery to the depositary. This was sufficient to bind her. (*Readicker v. Denning,* 86 Kan. 617, 122 Pac. 103; *Smith v. Kibbe,* 104 Kan. 159, 178 Pac. 427. See, also, *Hughes v. Thistlewood,* 40 Kan. 232, 19 Pac. 629; *Arnett v. Wescott,* 107 Kan. 693, 193 Pac. 377.) She did not act hastily or without information. The correspondence was read by her or to her and the matter of carrying out the contract and of executing and delivering the deed was under advisement for weeks. She in company with her husband visited and consulted a friend as to their duties and obligations in the transaction, and were informed by him that they would be compelled to carry out the contract.

The contention, that the transfer was void because the deed was signed and placed in the bank for delivery in reliance upon the statements made in the letter of Judge Price, is without merit. There was nothing in that letter to mislead them. He wrote to and dealt with them at arm's length, telling them that he had been employed as an attorney for the plaintiff and that if they refused to carry out the contract he would bring an action against them to compel performance. The legal effect of their agreement and conduct was stated by him, and further, that the plaintiff would insist that the transaction be closed according to the contract. They had no reason to rely on statements as to the law made by an attorney of their adversary. His representations related to the law of the controversy that had arisen between the parties and, besides, it appears that the rules of law were correctly stated by the at-

torney.   The letter furnished no ground for the claim of co-ercion nor for refusing to complete the transfer.

It is further urged that the failure of the agent to inform defendants of the advance of the price of land avoided the contract.   This is not a litigation between the agent and the owner and, besides, the land was not listed to be sold at its actual value but at a specified price fixed by the owner himself. There had been a slight advance in values because of the promise of good crops in the vicinity, but it appears that this promise was not realized at the harvest time, and further, it appears that the defendants had knowledge of the crop conditions. before the sale was made.

Another contention is that the contract should not be enforced because the sale was made to the wife of the agent.   An agent should, of course, deal with his principal openly and fairly, and it devolves on him to disclose any interest he may have in the property which is the subject of the agency.   An agent, however, may be the purchaser of the property intrusted to him to sell, if it is done with the knowledge and consent of the principal.   On account of the relationship between the agent and his wife, good faith and fair dealing probably required a disclosure as to who was purchasing the land, but it appears that the owner was fully informed in this respect.   Long before the execution of the deed the agent informed the owner that the sale had been made to his wife. She was designated as the purchaser in the contract and was named as grantee in the deed, and further, the bank was instructed by the defendant to deliver the deed to her upon compliance with the terms of the contract.   Since the·defendants had full information as to the purchaser when the deed and final contract were made, the rule. invoked by the defendants does not apply.

Nor is there any ground for the contention that the money tendered to the bank as a cash payment was insufficient.   The amount tendered was made through the agent who withheld the amount of his commission.   It had been agreed between the parties that the commission should be taken from the cash payment and the amount was stipulated in the contract deposited with the bank.   Instructions had been given to the bank to close the transaction according to the terms of the contract.

Instead of presenting the full amount of that payment to the bank, and the bank in turn handing back the $415, the bank accepted the payment, less the amount of the commission. This process carried out the agreement of the parties and the method by which it was accomplished is of little concern. It was a substantial performance of the agreement as to payment and the method employed afforded the defendants no ground for complaint.

It is further urged that the findings are not justified by the evidence. The findings were made in great detail, much greater than was necessary. Those that are material to the determination of the real issues in the case are well supported by the testimony, but it is not deemed necessary to recount and review the evidence supporting each of the findings questioned. It is clear that the case was fairly and thoroughly considered by the trial court and that a correct result was reached.

The judgment is affirmed.